JONES DAY
Koree B. Wooley, Bar No. 294489
kbwooley@jonesday.com
Cindi L. Ritchey, Bar No. 216899
critchey@jonesday.com
Jayce E. Gustafson, Bar No. 344961
jgustafson@jonesday.com
4655 Executive Drive
Suite 1500
San Diego, California 92121.3134
Telephone:   +1.858.314.1200
Facsimile:   +1.844.345.3178

Attorneys for Defendant
SAPUTO DAIRY FOODS USA, LLC

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JUAN ROMERO, an individual, on behalf of himself and on behalf of all persons similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SAPUTO DAIRY FOODS USA, LLC, a Delaware limited liability corporation; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No.<br><br>**SAPUTO DAIRY FOODS USA, LLC'S NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE COURT**<br><br>**[28 U.S.C. §§ 1331, 1332(d), 1441 and 1446]**<br><br>(Merced County Superior Court Case No. 23CV-00403)<br><br>Complaint Filed: February 3, 2023 |

**TO THE CLERK OF THE ABOVE ENTITLED COURT:**

PLEASE TAKE NOTICE THAT Defendant Saputo Dairy Foods, LLC ("Defendant" or "Saputo") hereby removes this matter to the United States District Court for the Eastern District of California, pursuant to 28 U.S.C. §§ 1331, 1332(d), 1441, and 1446.  The grounds for removal are as follows:

### Compliance with Statutory Requirements

1. On or about February 3, 2023, Plaintiff Juan Romero, individually and on behalf of himself and all others similarly situated ("Plaintiff"), filed a Class Action Complaint ("Complaint") in the Superior Court of the State of California for the County of Merced, Case No. 23CV-00403, captioned *Juan Romero, an individual, on behalf of himself and on behalf of all persons similarly situated, Plaintiff, vs. Saputo Dairy Foods USA, LLC, a Limited Liability Company and Does 1 through 50, inclusive, Defendants*.

2. In the Complaint, Plaintiff asserts claims for (a) Violations of the Unfair Competition Law; (b) Failure to Pay Minimum and Hourly Wages; (c) Failure to Pay Overtime Wages; (d) Failure to Provide Required Meal Periods; (e) Failure to Provide Required Rest Periods; (f) Recordkeeping and Wage Statement Violations; (g) Failure to Reimburse Employees for Required Expenses; and (h) Failure to Pay Sick Wages.

3. Plaintiff brings the action on behalf of himself and "a California class, defined as all individuals who are or previously were employed by Defendant in California, including any employees staffed with Defendant by a third party,[1] and classified as non-exempt employees (the 'California Class') at any time during the period beginning four (4) years prior to the filing of this Complaint and ending on the date as determined by the Court."  Complaint ¶ 4.

4. Service on Saputo was effectuated via Notice and Acknowledgement of Receipt of Service on March 15, 2023.  Saputo's removal of this action is timely because Saputo is removing this matter within 30 days of completion of service of the Complaint.  *See* 28 U.S.C. § 1446(b).

---

[1] For the purposes of the calculations in this Notice, Saputo does not include any current or former individuals who were employed by a third party staffing agency.  The information contained in the accompanying Declaration of Lisa Crist likewise excludes individuals working on assignment to Saputo pursuant to a third party.

     5.     In accordance with 28 U.S.C. § 1446(a), attached hereto as **Exhibit A** are true and correct copies of all process, pleadings, and orders served on Saputo in this action, including Plaintiff's Summons and Complaint.  Attached hereto as **Exhibit B** is a true and correct copy of Saputo's Answer to the Complaint, filed in the California Superior Court, county of Merced, on March 21, 2023.

     6.     Pursuant to 28 U.S.C. § 1446(d), Saputo promptly will provide written notice of removal of the Action to Plaintiff, and promptly will file a copy of this Notice of Removal with the Clerk of the Superior Court of the State of California, County of Merced.

### Intradistrict Assignment

     7.     Plaintiff filed this case in the Superior Court of California, County of Merced; therefore, this case may properly be removed to the Fresno Division of the Eastern District of California.  28 U.S.C. § 1441(a); Civil L. R. 120(d).

### CAFA JURISDICTION

     8.     This Court has original jurisdiction over this matter under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2).  Under CAFA, a claim is removable if the putative class has more than 100 members, the parties are minimally diverse, and the amount in controversy exceeds $5 million.  All three requirements are satisfied in this case.

#### Plaintiff and Saputo are Citizens of Different States

     9.     In this matter, diversity of citizenship exists because Saputo is a citizen of a different state than at least one proposed class member.  *See* 28 U.S.C. § 1332(d)(2).  Specifically, Saputo is a Delaware limited liability company with its principal place of business in Illinois.  Declaration of Lisa Crist ("Crist Decl.") ¶¶ 6-7.  *See* 28 U.S.C. § 1332(c)(1); *Hertz Corp. v. Friend*, 559 U.S. 77 (2010).

     10.     Plaintiff is a citizen of California.  Compl. ¶ 3; Crist Decl. ¶ 4.  Moreover, Plaintiff seeks to represent "individuals who are or previously were employed by Defendant in California."  Compl. ¶ 4.  At least one putative class member is a citizen of California.  Crist Decl. ¶ 5.  Accordingly, the first requirement is established.

DEFENDANT'S NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE COURT

Plaintiff Alleges a Class of More than 100 Members

11. As set forth in the accompanying Declaration of Lisa Crist, there are over 100 current or former Saputo employees that fall within Plaintiff's putative class. *See* Crist Decl. ¶ 3. Accordingly, the second requirement is established.

The Amount in Controversy Exceeds $5,000,000

12. To remove a class under CAFA, the total amount-in-controversy must exceed $5,000,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(d)(2). "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014); *see also Jauregui v. Roadrunner Transportation Servs., Inc.*, 28 F.4th 989, 994 (9th Cir. 2022) ("Amount at stake does not mean likely or probable liability; rather, it refers to possible liability.") (internal citation and quotation marks omitted). To satisfy this burden, a defendant may rely on a "chain of reasoning" that is based on "reasonable" assumptions. *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1202 (9th Cir. 2015). Assumptions are reasonable when they are "founded on the allegations of the complaint." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 925 (9th Cir. 2019).

13. Though Saputo concedes neither liability on Plaintiff's claims nor the propriety or breadth of any class as alleged by Plaintiff, the Complaint places in controversy a sum greater than $5,000,000. *See* Complaint; 28 U.S.C. § 1332(d). Plaintiff seeks unpaid minimum and overtime wages, unpaid overtime wages, compensation for noncompliant meal and rest periods, wage statement penalties, waiting time penalties, restitution, costs and attorneys' fees on behalf of Plaintiff and each of the purported class members. Compl. ¶¶ 20, 51, 74, 90, 94, 98, 102, 105, 111, and Prayer for Relief. The aggregate amount in controversy based on these claims and Plaintiff's allegations exceeds $5,000,000 for the reasons stated below.[2]

14. Specifically, the amount in controversy in this matter on the claims for failure to pay minimum wages, failure to provide meal and rest periods, failure to provide accurate written

---

[2] In establishing the amount in controversy for purposes of removal, Saputo does not concede or acknowledge in any way that the allegations in Plaintiff's Complaint are accurate or that Plaintiff or any proposed class member is entitled to any amount under any claim. Nor does Saputo

wage statements, and failure to pay waiting time penalties exceeds $5,000,000, and it is therefore unnecessary to address the amount placed in controversy by Plaintiff's other class claims asserted in the Complaint. This sum is based on the following calculations, which are set forth in greater detail below:

| Claim | Calculation | Amount in Controversy |
|---|---|---|
| Failure to Pay Minimum Wages (second claim): | $12.00 x 15 minutes per week x workweeks worked in the class period) multiplied by 2 (pursuant to claim for liquidated damages) | $ 429,590 |
| Failure to provide meal periods (Fourth claim) | $ 26.33 (average base hourly rate of pay) x 1 noncompliant meal period per pay period x 37,872 pay periods from February 3, 2019 through March 4, 2023 | $ 997,170 |
| Failure to provide rest periods (fifth claim): | $ 26.33 (average base hourly rate of pay) x 1 noncompliant rest period per pay period x 37,872 pay periods from February 3, 2019 through March 4, 2023 | $ 997,170 |
| Alleged Inaccurate Wage Statements (sixth claim): | Pay periods worked by employees between February 3, 2022 and March 4, 2022 x $50 for the first wage statement issued to employees and x $100 for subsequent wage statements | $ 1,101,600 |
| Waiting Time Penalties (sought on at least the second, third, and eighth claims): | Number of employees who separated from Saputo between February 3, 2020 and March 4, 2023 x average hourly rate of those employees x 8 hours per day x 30 days | $ 1,759,666 |
| Attorneys' Fees | 0.25 x $ 5,285,196 | $ 1,321,299 |
| **Total:** |  | $ 6,606,495 |

15.  Plaintiff seeks certification on behalf of "all individuals who are or previously were employed by Defendant in California, including any employees staffed with Defendant by a third party, and classified as non-exempt employees (the 'California Class') at any time during the period beginning four (4) years prior to the filing of this Complaint and ending on the date as determined by the Court." Compl. ¶ 4.

---

concede or acknowledge that any class or subclass may be certified, whether as alleged or otherwise, or that any or all of its current or former employees are entitled to any recovery in this case, or are appropriately included in the putative class.

16. <u>Second Claim for Relief: Failure to Pay Minimum Wages for Off-the-Clock Work</u>: Plaintiff alleges that putative class members were not compensated for all time worked because "Defendant, as a matter of established company policy and procedure, administers a uniform practice of rounding the actual time worked and recorded by Plaintiff and California Class Members, always to the benefit of Defendant, so that during the course of their employment, Plaintiff and California Class Members are paid less than they would have been paid had they been paid for actual recorded time rather than 'rounded' time. Additionally, Defendant engages in the practice of requiring Plaintiff and California Class Members to perform work off the clock in that Defendant, as a condition of employment, required these employees to submit to mandatory temperature checks and symptom questionnaires for COVID-19 screening prior to clocking into Defendant's timekeeping system for the workday." Compl. ¶ 8. Given the allegations of a regular practice of failing to compensate for all time worked, the amount in controversy for failure to pay all wages owed is at least $ 214,770.[3] Plaintiff also seeks liquidated damages for failure to pay minimum wages on this claim. Prayer for Relief ¶ E (citing California Labor Code § 1194.2). Accordingly, the amount in controversy on this claim is doubled, totaling $ 429,590.[4]

17. <u>Fourth Claim for Relief: Failure to Provide Meal Periods.</u> Plaintiff's fourth claim for relief seeks premium wage payments for missed uninterrupted meal periods and missed uninterrupted second meal periods. Compl. ¶¶ 11, 91-94. Plaintiff alleges that during the relevant time period, Plaintiff and the putative class are "unable to take thirty (30) minute off duty

---

[3] The amount in controversy on the claim for failure to pay minimum wages is calculated as follows: 71,590 (weeks worked by non-exempt employees in California between February 3, 2019 to March 4, 2023) x 15 minutes of uncompensated work per week x $12.00/hour (the lowest applicable minimum wage in the class period). See Crist Decl. ¶ 9.
[4] This figure is conservative for multiple reasons. First, the applicable minimum wage is higher than $12.00 per hour during the class period, based on state law. Indeed, the minimum wage in 2020 was $12.00/hour, 2021 was $13.00/hour, and 2022 was $14.00/hour. Second, this calculation assumes only fifteen minutes of uncompensated work per employee per week. As stated above and in the Complaint, the allegations regarding unpaid time are much broader. Saputo may properly assume that putative class members were undercompensated by at least 15 minutes per week. Third, the data used to calculate the amount in controversy excludes individuals who worked at Saputo pursuant to a third party. Fourth, this calculation assumes that all unpaid time would be paid at the minimum wage rather than the employee's base hourly rate or overtime rate of pay.

1  meal break and are not fully relieved of duty for their meal periods." *Id.* ¶ 11. Plaintiffs also
2  allege that Defendant improperly rounded time punches for meal breaks. *Id.* Based on Plaintiff's
3  allegations, Defendant conservatively estimates that putative class members experienced one
4  noncompliant meal break for each pay period they worked during the putative class period. *See*
5  *Quintana v. Claire's Stores, Inc.*, No. 13-0368-PSG, 2013 WL 1736671, at *6 (N.D. Cal. Apr. 22,
6  2013) (approving assumption for purposes of removal that the employee missed one meal break
7  per week where the complaint alleged that the class members "often" had to forego meal or rest
8  breaks) (CAFA); *Jasso v. Money Mart Exp. Inc.*, No. 11–CV–5500 YGR, 2012 WL 699465, at *6
9  (N.D. Cal. Mar. 1, 2012) (same) (CAFA). The amount placed in controversy on the missed meal
10 break claim alone is approximately $ 946,800.[5]

11       18.     <u>Fifth Claim for Relief: Failure to Provide Rest Breaks.</u> In addition to the amount
12 sought for unpaid meal period premiums, Plaintiffs, in their fifth claim for relief, seek premium
13 wages for missed rest periods. Compl. ¶¶ 12, 95-98. Plaintiffs allege that Defendant failed to
14 provide lawful rest breaks because its "policy restricts Plaintiff [and the putative class] from
15 unconstrained walks and is unlawful based on Defendant's rule which states that Plaintiff [and the
16 putative class] cannot leave the work premises during their rest period." *Id.* ¶ 12. California law
17 requires "employers must relieve employees of all duties and relinquish control over how
18 employees spend their time" during rest periods. *Augustus v. ABM Sec. Servs., Inc.*, 385 P.3d 823,
19 832 (Cal. 2016). Plaintiff therefore alleges that Defendant failed to provide compliant rest
20 periods to nonexempt employees 100% of the time. Accordingly, Defendant may properly
21 assume, for purposes of establishing the amount in controversy, that each putative class member
22 is entitled to premium pay for a rest break violation for each day they worked. The rest break
23 claim alone therefore puts nearly $5,000,000 in controversy.[6] But even assuming one rest break

---

[5] The amount in controversy on the meal break claim is calculated as follows: 37,872 (pay periods worked by nonexempt employees between February 3, 2019 and March 4, 2023) x $ 26.33 (one hour of pay at the average base hourly rate of those employees, pursuant to California Labor Code § 226.7) = $ 997,170. Crist Decl. ¶¶ 8, 10. This figure is conservative for several reasons, including because it does not account for alleged second meal period violations. Compl. ¶ 11 (alleging failure to provide a second meal period for shifts in excess of ten hours of work).
[6] The amount in controversy on the rest break claim, assuming a 100% violation rate based on Plaintiff's allegations of a noncompliant policy, is calculated as follows: 71,590 (workweeks worked by nonexempt employees between February 3, 2019 and March 4, 2023) x $ 26.33 (one

1  violation per pay period based on Plaintiff's allegations that employees "from time to time" were

2  unable to take a rest break, Compl. ¶¶ 12, 96-97, this claim still puts $ 946,800 in controversy.[7]

3        19.    <u>Sixth Claim for Relief:  Failure to Provide Accurate Written Wage Statements:</u>

4  Plaintiff also seeks statutory penalties pursuant to Labor Code Section 226(e) based on

5  Defendant's alleged failure to provide Plaintiff and members of the putative class with accurate

6  itemized wage statements.  Compl. ¶¶ 99-102.  Plaintiff alleges that Defendant's wage statements

7  were deficient because they did not reflect all applicable hourly rates during the pay period and

8  the total hours worked.  *Id.* ¶ 101.  In addition, Plaintiff alleges that Defendant "violates Cal. Lab.

9  Code 226(a)(8) by failing to list the correct name of the legal entity that employees Plaintiff" and

10  the putative class.  *Id.*  Plaintiff and members of the putative class seek penalties under California

11  Labor Code section 226(e), including "liquidated damages of fifty dollars ($50.00) for the initial

12  pay period in which the violation occurred, and one hundred dollars ($100.00) for each violation

13  in a subsequent pay period," but no more than $4,000 per employee *Id.* ¶ 102.  Given the

14  allegations of consistent inaccuracies in the wage statements, including but not limited to the

15  allegation that the wage statement did not correctly list the name of the legal entity that employs

16  Plaintiff and the putative class members, as well as the allegations that the wage statements

17  inaccurately reported all time actually worked by Plaintiff and the putative class members, the

18  amount in controversy for this claim is $1,101,600.[8]

19        20.    <u>Former Employees – Waiting Time Penalties (Sought on Claims for Minimum</u>

20  <u>Wages, Overtime Wages, and Sick Pay).</u>  While Plaintiff does not bring a standalone claim for

21  failure to pay all wages owed at termination pursuant to Labor Code section 203, he nevertheless

---

hour of pay at the average base hourly rate of those employees, pursuant to California Labor Code § 226.7) x 5 (one violation per day of work) = $ 4,734,000.  Crist Decl. ¶¶ 8, 9.

[7] The amount in controversy on the rest break claim, assuming only one rest break violation per pay period is calculated as follows: 37,872 (pay periods worked by nonexempt employees between February 3, 2019 and March 4, 2023) x $ 26.33 (one hour of pay at the average base hourly rate of those employees, pursuant to California Labor Code § 226.7) = $ 997,170.  Crist Decl. ¶¶ 8, 10.

[8] The amount in controversy on the inaccurate wage statement claim is calculated as follows: number of pay periods between February 3, 2022 and March 4, 2023 (11,299) less the number of employees working during that period (566), multiplied by $100, plus an additional $50 (for the first wage statement) for the number of employees employed during that period (566) = $1,101,600.  Crist Decl. ¶ 10.

- 8 -   DEFENDANT'S NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE COURT

seeks the remedies provided by that section in connection with his claims for failure to pay minimum and overtime wages (second and third claims) and claim for failure to pay sick pay at the regular rate of pay. Compl. ¶ 20 ("As a pattern and practice, Defendant regularly failed to pay Plaintiff and [other putative class members] their correct wages and accordingly owe them waiting time penalties pursuant to Cal. Lab. Code Section 203."); *id.* ¶ 74 (within claim for failure to pay all minimum wages owed, Plaintiff states that employees who have terminated their employment "are also [] entitled to waiting time penalties under Cal. Lab. Code § 203, which penalties are sought herein"); *id.* ¶ 90 (same, for discharged individuals who were not paid all overtime wages allegedly due); *id.* ¶¶ 110-111 (same, for discharged individuals who were paid sick pay during employment at a rate lower than the regular rate of pay). Given the broad allegations of the Complaint that Defendant required employees to work off the clock, including participating in COVID-19 screenings, improperly rounded time against employees, and paid sick pay at a rate lower than the regular rate of pay, it is more than reasonable to assume, for purposes of establishing the amount in controversy, that each discharged employee was not paid all wages due at the time of termination. The amount placed in controversy by Plaintiff's claim for waiting time penalties on behalf of individuals employed by Saputo between February 3, 2020 and March 4, 2023 is $ $ 1,759,666.[9] *See Gomez v. Michaels Stores, Inc.*, No. EDCV152328JGBDTBX, 2016 WL 738196, at *3 (C.D. Cal. Feb. 22, 2016).

21. Plaintiffs also seek attorneys' fees. *E.g.*, Complaint ¶¶ 21, 112, and Prayer for Relief. Where, as here, Plaintiffs are entitled to recover future attorneys' fees if this action succeeds, "there is no question that future [attorneys' fees incurred after removal] are 'at stake' in the litigation, and the defendant may attempt to prove that future attorneys' fees should be included in the amount in controversy." *Fritsch v. Swift Transp. Co. of Arizona, LLC*, 899 F.3d 785, 794 (9th Cir. 2018) (internal citations omitted); Cal. Lab. Code § 233(e) (providing for recovery of attorneys' fees). Using "25% as a benchmark" for attorney's fees would add

---

[9] The amount in controversy on the waiting time penalties claim is calculated as follows: 322 (number of non-exempt employees who worked for and separated from Saputo between February 3, 2020 and March 4, 2023) x $22.77 (average hourly rate of those employees at the time of their termination) x 8 hours per day x 30 days = $ 1,759,666. Crist Decl. ¶ 11.

$ 1,321,299 to the amount in controversy (0.25 x $ 5,285,196). *In re Hyundai & Kia Fuel Economy Litig.*, 926 F.3d 539, 570 (9th Cir. 2019). Adding these attorneys' fees to the previously established amount yields more than $ 6,606,495 million in controversy.

22. The amount in controversy calculation does not include additional amounts put in controversy by the claim pursuant to the unfair competition law (first claim), by the claim for indemnification of business expenses (seventh claim), and additional damages and penalties under the third claim (overtime) and eighth claim (sick pay). This dispute plainly exceeds the minimum amount-in-controversy requirement for jurisdiction pursuant to CAFA.[10]

**FEDERAL QUESTION JURISDICTION**

23. This Court also has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 and removal is proper under 28 U.S.C. § 1441(a) because the Complaint is founded upon claims "arising under the laws of the United States." In particular, Plaintiff's claim for unpaid overtime arises under the laws of the United States because it is completely preempted and supplanted by Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185 *et seq*.

24. Plaintiff's third claim alleges that Defendant failed to pay overtime in accordance with California Labor Code § 510. Compl. ¶¶ 8, 75-90. Plaintiff is a current employee of Saputo. Crist Decl. ¶ 12. For at least the last four years, he has been a member of Teamsters Local No. 386 and his employment with Defendant is therefore covered by a collective bargaining agreement. *Id.* The relevant agreements, which have been in effect since prior to February 3, 2019 and are still in effect expressly provide for the wages, hours of work, and working conditions of the employees, a premium wage rate for all overtime hours worked, and a regular hourly rate of pay for covered employees of not less than 30 percent more than the state minimum wage. Crist Decl., Exhibits 1 and 2, *e.g.*, sections 5, 6, 7, 10, 12, and schedule A.

---

[10] If challenged, Saputo reserves the right to offer evidence or information to establish the amount in controversy on all claims alleged in the Complaint. For example, Saputo reserves the right to update the relevant calculations to include individuals working at Saputo pursuant to third party staffing agencies, to use a rate higher than the base hourly rate of pay to calculate the premiums owed for missed meal and rest periods, to rely upon the alleged shortcoming in its rest break policy to assume a 100% violation rate for the rest break claim, among other things.

25.     As the Ninth Circuit explained in *Curtis et al. v. Irwin Industries, Inc.*, 913 F.3d 1146 (2019), Plaintiff's claim for overtime pay is therefore preempted under § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, because California overtime law does not apply to an employee working under a collective bargaining agreement, Cal. Lab. Code § 514, and [Plaintiff] worked under such an agreement." Where, as here, "[the Plaintiff's] right to overtime exists solely as a result of the CBA, his claim that [Defendant] violated overtime requirements . . . is preempted under § 301." *Id.* at 1155 (internal citations omitted).[11] Plaintiff's collective bargaining agreements expressly provide for the requirements of section 514. Thus, Plaintiff's claim for overtime pay is preempted under Section 301.

## Supplemental Jurisdiction

26.     Under 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction over Plaintiff's remaining state law causes of action, most of which are related to Plaintiff's claims for alleged failure to pay overtime. Plaintiff's remaining state law causes of action arise from the same series of events so as to form part of the same case or controversy under Article III of the United States Constitution. As such, supplemental jurisdiction is appropriate.

WHEREFORE, the above-titled Action is hereby removed to this Court from the Superior Court of the State of California, County of Merced.

Dated: March 22, 2023

JONES DAY

By: /s/ *Koree B. Wooley*
    Koree B. Wooley
    Cindi L. Ritchey
    Jayce E. Gustafson

Attorneys for Defendant
SAPUTO DAIRY FOODS USA, LLC

---

[11] Although Plaintiff does not allege that he is a union member and that he is governed by a CBA, the lack of such allegations does not affect Section 301 preemption because resolution of Plaintiff's claims turns on interpretation of provisions in the CBA. *See Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 997 (9th Cir. 1987) ("The district court . . . properly looked beyond the face of the complaint to determine whether the contract claim was in fact a section 301 claim for breach of a collective bargaining agreement 'artfully pleaded' to avoid federal jurisdiction.").